## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| JOYCE SCHOFIELD, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | No. 19-4207 |
| WENDY NICHOLAS, et al., | : | |
| Respondents. | : | |
| | : | |

### MEMORANDUM OPINION

**Kenney, J.**                                                                                      **March 21, 2022**

### I.   INTRODUCTION

In this habeas corpus proceeding, which has been commenced pursuant to 28 U.S.C. §

2254, *pro se* Petitioner Joyce Schofield challenges the constitutionality of her 2000 state court

conviction of first-degree murder, attempted murder, arson, aggravated assault, causing a

catastrophe, possession of an instrument of crime, and conspiracy. Upon referral from this Court,

Magistrate Judge Marilyn Heffley has issued a Report and Recommendation ("R&R") finding

that Schofield's multiple claims for habeas relief are without merit and recommending that her

habeas petition be denied and dismissed. Schofield has filed timely objections to the R&R.

After a review of Schofield's habeas petition, the R&R, and the Objections thereto, and

for the reasons set forth below, this Court overrules the Objections, approves and adopts the

R&R in its entirety, and denies and dismisses the habeas petition without holding an evidentiary

hearing or issuing a certificate of appealability.

### II.   RELEVANT BACKGROUND

#### A.  Schofield's Charges, Conviction, and State Court Challenges

1

The facts underlying Schofield's conviction were summarized by the Philadelphia Court

of Common Pleas as follows:

> On June 2, 1999, there was a house fire at the premises of 2061 South 60th Street in Philadelphia. Firefighters arrived to find the building totally engulfed in flames. The lifeless body of a child later identified as three (3) year old Tamir Johnson was found inside the building. Two other residents of the house were badly burned. Eyewitness, Eric Williams informed police that he had observed a man acting suspicious in the area just before the fire. Williams later identified Steven Davis as the suspicious man. A partial license tag and the description of the vehicle Davis drove was supplied by Williams. This information eventually led police to an apartment shared by Deirdre Douglas and Steven Davis at 71 Vanderbilt Court, Sicklerville, New Jersey. The Mercury cougar described by Williams was observed by police in the parking lot of the New Jersey residence.
>
> When questioned and warned of her constitutional rights, Deirdre Douglas gave a statement which essentially revealed a conspiracy in which Steven Davis had been paid to set the fire. She also admitted that she had accompanied Davis to commit the [a]rson and had learned the following day that a child had died and that others had been severely burned. When the defendant, Joyce Schofield[,] was questioned by police she was in the hospital after having taken an overdose of pills in a failed suicide attempt. After being warned of her constitutional rights she gave a statement which indicated that she had participated in a conspiracy with Steven Davis[,] who was employed by a construction company owned by herself and a live[-]in boyfriend Ron Bridges. The object of the conspiracy was to [m]urder Margaret Bridges, Ron Bridges' mother. Margaret Bridges was one of the victims who was burned but survived the fire. Once Margaret was dead the plan was to also [m]urder Ron Bridges. [Schofield] and Ron Bridges were having problems in their relationship, and she felt that these problems were his mother's fault.
>
> [Schofield] claimed to have been verbally abused by Ron Bridges and initially wanted only him killed. She reconsidered and included his mother Margaret Bridges because she felt Margaret would suspect her if Ronald was killed. In addition, [Schofield] reasoned that Margaret would inherit all Ronald's assets. [Schofield] had paid a total of six thousand dollars to Steven Davis to have Ronald and Margaret Bridges killed. She claimed to have changed her mind after completing the payments and to have asked Davis not to complete the murders. She also claimed to have been shocked when she learned that Davis had been responsible for the fire. In apparent guilt for her actions, she tried to kill herself by taking an overdose of pills.

*Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999, 2001 WL 36125830 (Pa. Ct. Com.

Pl. Phila. Cnty. Oct. 26, 2001) (internal citations omitted). Schofield appealed the judgment of

sentence on August 17, 2000. *Commonwealth v. Schofield*, No. 519 EDA 2001 (Pa. Super. Ct. Oct. 28, 2003). The Superior Court deemed Schofield's claims waived due to failure to comply with Pennsylvania Rule of Appellate Procedure 1925(b). *Id.*, *aff'd*, 888 A.2d 771, 775 (Pa. 2005).

On March 12, 2007, Schofield filed a petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-9546. *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. Aug. 15, 2008). The PCRA court reinstated her appellate rights but denied other relief. *Id.*, *aff'd*, No. 2791 EDA 2007 (Pa. Super. Ct. Apr. 12, 2010).

Schofield filed a new PCRA petition on July 11, 2011, which was dismissed on October 10, 2017. *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. Dec. 7, 2017). Schofield subsequently filed a timely appeal to the Superior Court, which affirmed the lower court's dismissal of Schofield's second PCRA petition. *Commonwealth v. Schofield*, No. 3347 EDA 2017, 2019 WL 334935 at *5 (Pa. Super. Ct. Jan. 28, 2019). The Pennsylvania Supreme Court denied allowance of appeal on August 2, 2019. *Commonwealth v. Schofield*, 217 A.3d 179 (Pa. 2019).

**B.  The Instant Petition for Habeas Relief**

On September 11, 2019, Schofield filed a *pro se* Habeas Petition in this Court, which purported to assert four grounds for relief. *See* ECF No. 2. The Petition was referred to Magistrate Judge Heffley for a report and recommendations on October 6, 2021. *See* ECF No. 36. Respondents filed a Response in Opposition to Schofield's Habeas Petition on November 13, 2020. *See* ECF No. 33.

Schofield alleges four claims in her Habeas Petition, which she believes warrant relief. First, she claims that evidence of "third party motive and actions of drug dealers at the scene" was "suppressed from the jury with D/A [sic] telling jury that petitioner was there and set the fire." ECF No. 2 at p. 14. She admits that she was part of the original conspiracy but claims to have withdrawn prior to the arson and asserts that evidence of a separate, drug-related conspiracy was suppressed at trial. *Id.* Schofield contends that this claim was exhausted on her appeal submitted to the Pennsylvania Superior Court on June 15, 2009, and the Pennsylvania Supreme Court on May 10, 2010. *Id.* at p. 15.

Next, Schofield claims her due process rights were violated when Philadelphia Police conducted an "illegal interrogation," removed her "from NJ courthouse," and failed to follow their procedures, policies, and training. *Id.* at p. 16. She argues that by questioning her in the hospital and removing her from New Jersey, law enforcement officials violated her constitutional rights. *Id.* Schofield contends that she did not raise this issue on appeal because she "told every atty [sic] [that she] had contact with that [she had] been kidnapped and drugged. No one did anything – didn't want to rock the boat." *Id.*

As her third ground for relief, Schofield claims that there existed "tampering with witness, evidence, intimidation, perjury" in relation to "Dirty D.A. Roger King." *Id.* at p. 18. Accordingly, Schofield claims that "[e]very time info came out in an appeal that damaged the state's case and could lead to a new trial – THAT EVIDENCE would disappear." *Id.* She contends that she did not raise this issue on appeal because she "just learned the total extent of COVER-UP with last attorney doing PCRA." *Id.* Specifically, she alleges that the PCRA attorney "had none of the evidence needed to do a proper appeal – he refused to request saying he wasn't doing anything he wasn't getting paid to do." *Id.*

4

As her fourth and final ground, Schofield claims Ineffective Assistance of Counsel on the basis that "so many things went undone to prove a miscarriage of justice was taking place by convicting Petitioner." ECF No. 2 at p. 19. In support of this claim for relief, Schofield argues that her counsel was ineffective in conceding guilt, failing to do his own investigation, failing to present her hospital records, failing to preserve her right to confrontation, failing to object when King stated that she was seen at the crime scene, arguing with the judge against her interests, and failing to attend the "motion to suppress drug info[rmation]." *Id.* at pp. 19–20.

## C. Magistrate Judge Heffley's Report and Recommendation

Magistrate Judge Heffley's R&R, issued on November 9, 2021, concludes that Schofield is not entitled to habeas relief on any of her claimed grounds. *See generally* R&R, ECF No. 40. Magistrate Judge Heffley found that the claims Schofield purports to assert have not been exhausted, as they were never fairly presented to the state courts, and are thus, procedurally defaulted. Moreover, the R&R concludes that even if Schofield's claims had been properly exhausted, each claim is substantively meritless, and relief would not be warranted.

Regarding Schofield's first claim, the R&R concludes that it is procedurally defaulted because Schofield failed to raise it on appeal, and that, even if Schofield had raised the issue on appeal, it is nonetheless meritless. *Id.* at pp.8–9. The R&R found that Schofield's "vague allegations of state suppression" could not support grounds for habeas relief, and that in any case, the witness testimony she referenced would be barred as it constitutes clear hearsay. *Id.* Moreover, the record indicates that the prosecution investigated the theory of a drug-related conspiracy and was "prepared to demonstrate that it 'eliminated [the drug-related suspect].'" *Id.* (referencing Transcript of Record at 7, 11, *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. July 17, 2000)).

The R&R concludes that Schofield's second claim, that her due process rights were violated when detectives interviewed her in New Jersey and transported her from New Jersey, is also procedurally defaulted and substantively meritless. ECF No. 40 at p 10. The trial court confirmed Schofield's capacity to give statements "in and upon release from the hospital" when it denied a pre-trial motion to suppress Schofield's confessional statements. *Id.* at pp. 10–11. Further, Motion to Suppress Hearing, police testimony stated that Schofield "consented to questioning, was alert and awake, and waived her *Miranda* rights. *Id.* at p. 11. Accordingly, the trial court found that, albeit, "intrusive," the hospital questioning did not render Schofield's statements involuntary and that there was "nothing to indicate that [Schofield's] statement was not voluntary and not knowingly taken." *Id.*

The R&R also concludes that Schofield's third claim, that the Commonwealth committed witness and evidence tampering, intimidation, and perjury, is procedurally defaulted and substantively meritless. *Id.* at p. 12. The R&R found that Schofield's assertions were conclusory and "fail[ed] to identify specific witnesses or evidence with which the prosecution tampered." *Id.*

Finally, the R&R addresses each of Schofield's seven distinct claims of ineffective assistance of counsel and finds that each claim is procedurally defaulted and substantively meritless. *See* ECF No. 40 at pp. 13–17.

The R&R finds that the claim of ineffective assistance of counsel based on counsel allegedly requesting jury return guilty verdict is meritless. *Id.* at p. 13. Counsel merely introduced a twofold theory of defense: diminished capacity and renunciation of conspiracy. *Id.* Both defenses acknowledged Schofield's participation in the conspiracy at some poin,t and based on her statements in the record and testimony of various witnesses, "it is unlikely the outcome of

the trial would have been different if counsel had not presented defenses requiring acknowledgment of her involvement." *Id.* at p. 14.

The R&R concludes that Schofield's claim that her counsel failed to do his own investigation fails because Schofield did not "indicate what sort of investigation he should have completed or how that investigation would have affected the case." *Id.*

Regarding the claim that counsel failed to present hospital records, the R&R concludes that the trial court's denial of the Motion to Suppress statements made by Schofield would have rendered any attempt by counsel to present hospital records "redundant and futile." *Id.* at p. 15.

The R&R also finds that Schofield's claim that counsel failed to preserve her right to confrontation is meritless in that it "gives no additional information to explain how counsel violated the Confrontation Clause." *Id.*

The R&R finds that counsel's failure to object to District Attorney Roger King's opening statement does not constitute ineffective assistance of counsel. *Id.* In his opening, King stated that Schofield was observed at the scene of the crime. *Id.* (referencing Transcript of Record at 31–33, 11, *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. July 17, 2000)). Failure to object was "unlikely to affect the outcome of a trial that took place over days" and did not constitute the "serious error" as required by *Strickland*. *Id.* at p. 16.

The R&R also finds that counsel did not argue with the trial court against Schofield's interests, as Schofield contended in her petition. *Id.* Instead, counsel was "advocating for the presentation of alternative defenses" and followed the court's orders when he was required to pursue only the withdrawal defense. *Id.* Ultimately, counsel could not present both the diminished capacity argument—which required admission of guilt—and the withdrawal argument—which required denial of criminal liability. *Id.*

Lastly, the R&R concludes that Schofield's claim alleging counsel's failure to attend a Motion to Suppress Hearing does not support a finding of ineffective assistance of counsel because Schofield did not indicate which proceeding she was referring to. *Id.* at p. 17. Judge Heffley infers that Schofield was referencing the sidebar conversations wherein the prosecution, co-defendant's counsel, and the judge discussed the drug-related conspiracy theory, but that Schofield did not demonstrate "how her counsel's presence in this conversation deprived her of a fair trial." *Id.*

### D. Schofield's Objections – Generally

Schofield timely filed *pro se* Objections to Magistrate Judge Heffley's R&R on December 27, 2021. *See* ECF No. 44. Schofield's Objections are difficult to discern, tending to repeat and overlap with one another. The characterization and analysis of the Objections provided herein, represents the Court's best attempt to give the Objections coherence and structure to enable a full and fair review. Accordingly, this Court categorizes the Objections into the following three categories: (1) due process violations; (2) suppression of evidence; and (3) ineffective assistance of counsel.

Schofield first objects to the R&R by contending that her due process rights were violated when, "police, out-of [sic] jurisdiction, conducted a warrantless search of the hospital and disregarded any and all of this patient's rights in her hospital room and regarding the medical care that she received." ECF No. 44 at p. 1. In support of this Objection, Schofield states that "[t]he police did not care that Ms. Schofield had any privacy rights in her room" as protected under New Jersey privacy regulations (N.J.A.C. 8:43G-4) and the Fourth Amendment. ECF No. 44 ¶ 5. Accordingly, she stated that "it was an error for the court not to suppress the fruits of the police interrogation." *Id.*

Next, Schofield objects on the basis that "there is evidence that the defendant initially engaged Davis to start a fire, but that she abandoned the idea and told Davis to cease, harmlessly withdrawing from a conspiracy with Davis." ECF No. 44 at p. 5. In support of this Objection, Schofield states that Eric Williams testified that "he was on the scene when the fire started, that he was selling drugs, and that a local drug dealer named 'Dumptruck' had a feud going on with someone in the house that burned," that Dumptruck's associated attempted to intimidate Williams, and that Williams bought the gasoline used to burn the house. *Id.* ¶ 11. Moreover, she contends that Williams was an "expert" witness, whose testimony should have been presented at trial. *Id.* ¶ 14.

Finally, Schofield's Objects on the grounds that "trial and post-trial counsel were ineffective for failing to test: the legality of the search of the hospital, the admissibility of the laboratory testing, [and] the court's prohibition of an alternative scenario." *Id.* at p. 8. Though alleged in its own section of Schofield's Objections, this Court interprets Schofield's Objection that "chemical analysis of debris from the fire was introduced in violation of defendant's right to confrontation under the Sixth Amendment" within the broader framework of ineffective assistance of counsel as this claim was raised as a basis for her ineffective assistance of counsel argument in the Habeas Petition. Regarding her right to confrontation, Schofield claims that counsel failed to cross-examine the chemist who tested debris from the fire, and as a result, failed to learn who actually performed the testing thus "contributing to the prejudice that the test was inherently unreliable in that only partial results were revealed, contaminants were not even mentioned, which could reveal alternative theories to the origin of the fire." *Id.* ¶ 8.

In support of the Objection based on ineffective assistance of counsel, Schofield also states generally that the R&R "does not incorporate the evidence at trial as noted above" and

reiterates that her "participation in the arson terminated when she repudiated the conspiracy." *Id.* ¶ 19.

## III.   LEGAL STANDARDS AND APPLICABLE LAW

### A.  Habeas Relief Under 28 U.S.C. § 2254 – General Principles

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). Title 28 U.S.C. § 2254 governs petitions for a writ of habeas corpus on behalf of state court prisoners. Under the statute, habeas relief is available to a petitioner only where she can show "[s]he is in custody in violation of the Constitution or laws" of the United States. 28 U.S.C. § 2254(a). Moreover, a habeas petitioner must show that a state court's determination of the merits of his claims resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"[1] 28 U.S.C. § 2254(d)(1)-(2). Where "the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Where the challenge is directed at a state court's factual determination, that determination "shall be presumed to be correct" by a federal court; the habeas petitioner "shall have the burden of rebutting [this] presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008) ("[A] federal habeas court must afford a state court's factual findings a

---

[1] Section 2254 was modified by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"), one purpose of which was "to reduce delays in the execution of state and federal criminal sentences." *Woodford v. Garceau,* 538 U.S. 202, 206 (2003). In particular, Congress adopted an amended 28 U.S.C. § 2254(d), governing petitions for writs of habeas corpus where a petitioner's claims were previously "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *Woodford*, 538 U.S. at 206.

presumption of correctness and that [] presumption applies to the factual determinations of state trial and appellate courts.");[2] *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) ("[I]f permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable.").

In the end, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Harrington*, 562 U.S. at 101; *see Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (explaining that § 2254 "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt").

## A. Contested Report and Recommendations – General Principles

When timely objections to a magistrate judge's report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a *de novo* review of those portions of the report to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). However, a district court "[is] not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x 142, 147 (3d Cir. 2016) (citing *Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 49-50 (1st Cir. 1995)); *see Weidman*, 164 F. Supp. 3d at 653 ("Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate

---

[2] "[T]he § 2254(e)(1) presumption of [factual] correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d)." *Nara v. Frank*, 488 F.3d 187, 200-01 (3d Cir. 2007).

judge to the extent it deems proper." (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000))). Where objections are general rather than specific, or untimely, *de novo* review is not required. *See Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); *see also Snyder v. Bender*, 548 F. App'x 767, 771 (3d Cir. 2013). Uncontested portions of a report and recommendation, as well portions to which untimely or general objections are made, may be reviewed under a standard determined by the district court; however, at the very least, these portions should be reviewed for "clear error or manifest injustice." *Colon-Montanez v. Delbalso*, No. 3:15-CV-02442, 2016 WL 3654504, at *1 (M.D. Pa. July 8, 2016); *Equal Employment Opportunity Comm'n v. City of Lng Branch*, 866 F.3d 93, 100 (3d Cir. 2017) ("A district court should 'afford some level of review to dispositive legal issued raised by the report.") (internal citation and quotation omitted). After such review, a district court "may accept, reject, or modify, in whole or in part, the findings and recommendation" contained in a report. 28 U.S.C. § 636(b)(1)(C).

Additionally, Rule 4 provides that a federal habeas court may take judicial notice of state court records, dockets, and/or state court opinions, as well as its own court records. *See Richardson v. Thompson*, No. 13-1466, 2014 WL 65995, at *3 (W.D. Pa. Jan. 8, 2014).

### B.  Exhaustion and Procedural Default – General Principles

Due to the deference owed by federal courts to state courts under § 2254, the doctrine of "exhaustion" requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see* 28 U.S.C. § 2254(b)(1) (explaining that a petition for a writ of habeas corpus "shall not be granted unless it appears that—(A) the applicant has exhausted the remedies

available in the courts of the State"[3]). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 225, 261 (3d Cir. 1999).

An important "corollary" to the exhaustion requirement is the procedural default doctrine. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Where a state court has denied a petitioner's claim for collateral relief based on an independent and adequate state procedural rule, the claim is considered "procedurally defaulted" and generally may not be reviewed by a federal court. *Id*. ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. This is an important 'corollary' to the exhaustion requirement." (citations omitted)).[4] Similarly, where "a claim has not been fairly presented to the state courts but state law clearly forecloses review" –as happens when the statute of limitations on a collateral challenge runs—the claim is considered to be procedurally defaulted and may not be taken up on federal habeas review as long as the state rule foreclosing review is an independent and adequate procedural rule.[5] *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002); *see Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural

---

[3] A petitioner can overcome the requirement of exhaustion if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

[4] "The procedural default doctrine [ ] advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Id.* at 2064 (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

[5] As a technical matter, in such a situation "exhaustion would be futile and is excused." *Lines v Larkins*, 208 F.3d153, 166 (3d. Cir. 2000).

requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").

However, "[a] state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show "cause" to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Davila*, 137 S. Ct. at 2064-65 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 2065 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A factor is "external" only if it cannot be attributed to the petitioner. *Coleman*, 501 U.S. at 753.

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held, as it explained in a subsequent case, that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as "cause." That is so . . . because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." *Maples v. Thomas*, 565 U.S. 266, 280-81 (2012) (quoting *Coleman*, 501 U.S. at 753-54). Yet, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court recognized a narrow exception to this rule, finding that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 17. Stated differently, the rule set forth in *Martinez* is as follows: "counsel's failure to raise an ineffective assistance [of trial counsel] claim on collateral review may excuse a procedural default if: '(1) collateral attack counsel's failure itself constituted ineffective

assistance of counsel under *Strickland*, and (2) the underlying ineffective assistance claim is "a substantial one."'[6] *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 237-38 (3d Cir. 2017) (quoting *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014)). An underlying claim is "substantial" where it "has some merit." *Glenn*, 743 F.3d at 410.

### C.  Ineffective Assistance of Counsel – General Principles

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the federal standard applicable to claims of ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense."[7] *Id*. at 687.

To establish the first component—deficiency—a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (citing *Strickland*, 466 U.S. at 687). "For the deficient performance prong, '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). The deficiency inquiry is "deferential":

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

---

[6] A habeas petitioner "must demonstrate that this constituted deficient performance under the first prong of the *Strickland* analysis—meaning that counsel's representation fell below an objective standard of reasonableness"; actual prejudice may be established with a substantial claim of ineffective assistance of trial counsel that would otherwise have been deemed defaulted. *Preston v. Superintendent Graterford SCI,* 902 F.3d 365, 376 (3d Cir. 2018).

[7] The Pennsylvania standard for reviewing ineffective assistance claims has been held to be in effect identical to the standard set forth in *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

*Id.* (quoting *Strickland*, 466 U.S. at 689).

To establish the second component—prejudice—the defendant must show that "there is a reasonable probability that, but for counsel's error, the result would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694 and *Harrington*, 562 U.S. at 112).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689 and *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). This is because the question before a federal court entertaining a § 2254(d) petition that raises a claim of ineffective assistance is not whether the state court's ruling on that issue was correct—that is, whether counsel was actually ineffective under *Strickland*—but only whether the state court's determination of that issue was objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694 (2002) ("The focus of the [] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in [*Williams v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.").

## IV.   DISCUSSION

As an initial matter, the Court finds that Schofield's Objections are, on the whole, timely and sufficiently particular to warrant a *de novo* review of those portions of the R&R to which the Objections are directed. *See* 28 U.S.C. § 636(b)(1)(C); *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015). The Court will proceed to address Schofield's Objections in the context of the R&R's primary findings and conclusions.

16

As previously stated, this Court interprets Schofield's Objections as falling into three categories: (1) due process violations; (2) suppression of evidence; and (3) ineffective assistance of counsel. Upon review, this Court agrees with the R&R that each claim alleged in Schofield's habeas petition is procedurally defaulted, and notwithstanding procedural default, substantively meritless. Similarly, Schofield's Objections are each without merit.

### A.  Objections Based on Violations of Petitioner's Due Process Rights

In her Habeas Petition, Schofield alleged that her due process rights were violated when Philadelphia police conducted an "illegal interrogation," "unconstitutional[ly]" removed her from New Jersey, and failed to follow its department's policy, procedure and training. *See* ECF No. 2 at p. 16. The R&R addresses this claim and concludes that it is both procedurally defaulted and substantively meritless. ECF No. 40 at p. 10. Schofield's Objection reframes this claim to argue that "police were acting out-of-jurisdiction" by conducting a "warrantless search" of her hospital room in invasion of her rights. ECF No. 44 ¶ 5.

As stated by Magistrate Judge Heffley, the trial court confirmed Schofield's capacity to give statements while she was in and after she was released from the hospital. ECF No. 40 at p. 10. Trial counsel moved to suppress Schofield's statements given during and after her hospital stay based on involuntariness and in light of her attempted suicide; however, the trial court stated that there was "nothing to indicate that her statement was not voluntary and not knowingly taken." *Id.* at pp. 10–11 (citing Transcript of Record at 5–6, *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. May 17, 2000)). Detective Edward Rocks testified at the Motion to Suppress Hearing that in the hospital, Schofield was alert and awake and knowingly waived her *Miranda* rights. ECF No. 40 at p. 11 (citing Transcript of Record at 15–18, *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl.

Phila. Cnty. May 17, 2000)). Medical staff at the hospital also signed a consent form. ECF No.

40 at p. 11. In her Objection, Schofield contends that the form was signed by the "head nurse"

but that no one ever sought permission from her "medical doctor as to whether the interrogation

was detrimental to the patient's health, physical or mental." ECF No. 44 ¶ 3. The sufficiency of

the consent form was reviewed by the trial court. ECF No. 40 at p. 11. The trial courts factual

determination regarding the form "shall be presumed to be correct" by this Court. 28 U.S.C. §

2254(e)(1). Given that Schofield's Objections contain merely bare assertions regarding the

circumstances of the detectives' presence in the hospital and the sufficiency of the hospital

consent form, she has not met her burden "of rebutting [this] presumption of correctness by clear

and convincing evidence." *Id.*

Moreover, when Schofield was extradited from New Jersey to Pennsylvania, the record

indicates that she was being released from the hospital, not committed to the state's mental

facility as she alleged in her Petition. *See* ECF No. 2 at p. 16 ("[M]ental health staff deemed her

incompetent & was making plans for inpatient stay at state mental facility."). The record also

shows that Schofield signed the extradition waiver, waived her *Miranda* rights again, told

detectives she felt "fine," made and corrected various statements, and consented to be videotaped

for a police interview. ECF No. 40 at p. 11 (citing Transcript of Record at 22–38,

*Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. May

17, 2000)). Schofield's trial counsel conceded that Schofield was given the proper constitutional

warnings. *Id.* Accordingly, the trial court denied all motions to suppress Schofield's statements

made after her release from the hospital. *Id.* Once again, this court will presume that the trial

courts factual findings to be correct, absent clear and convincing evidence to the contrary. *See* 28

U.S.C. § 2254(e)(1). Regarding the legality of Schofield's extradition and her statements made

thereafter, she has presented no new evidence. Rather, she asserts that her privacy rights, as protected under New Jersey regulations (N.J.A.C. 8:43G-4) were violated. ECF No. 2 ¶ 5. Per this Court's holding in *Grant v. Tice*, Schofield cannot allege a new legal claim in a petition objecting to the Magistrate Judge's R&R. No. CV 17-3471, 2019 WL 2016260, at *3; *see also Fowler v. Mooney*, No. 14-1768, 2015 WL 6955434, at *2 (E.D. Pa. Nov. 9, 2015) (DuBois, J.) (concluding "the interest of justice does not require consideration of the new claims because all such claims could have been presented to the magistrate judge by pro se petitioner, and he failed to do so").[8]

### B. Objections Based on Suppression of Evidence[9]

The Court also agrees with Magistrate Judge Heffley that Schofield's claim regarding suppression of evidence is procedurally defaulted and substantively meritless. In the Habeas Petition, Schofield claimed that she exhausted this issue on appeal. However, this Court finds

---

[8] On appeal of her second PCRA petition, Schofield asserted that counsel was ineffective in failing to argue that her first confession to police should have been suppressed by New Jersey law because she believed New Jersey law "provided greater protections for hospitalized individuals when they are interviewed by the police." *Commonwealth v. Schofield,* No. 3347 EDA 2017, 2019 WL 334935, at *4 (Pa. Super. Ct. Jan. 28, 2019). The Superior Court held that New Jersey and Pennsylvania law were not in conflict, given that both utilize the "totality of the circumstances" test. *Id.* While Schofield's objection here is distinct, this Court would like to reiterate the Superior Court's holding pertaining to the use of New Jersey law.

[9] Based on Schofield's statement that she was a "victim of a fundamental miscarriage of justice," she may have been offering this Objection to assert her "actual innocence." ECF No. 44 at p. 1. Petitioners may allege "actual innocence" in order to circumvent the procedural default requirements, but only if they present "new, reliable evidence of actual or factual innocence that makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Enriques v. Dist. Att'y of Cty. of Philadelphia*, No. 20-CV-2495-JMY, 2022 WL 348644, at *4 (E.D. Pa. Feb. 4, 2022) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). To the extent that Schofield may have been alleging a claim of "actual innocence," this Court finds that habeas denial is warranted on the grounds that the Objection utterly failed to supplement the claim with new, reliable evidence.

that the R&R rightly concludes that an evidence suppression claim was "not otherwise fairly presented in state court." ECF No. 40 at p. 8.[10]

In her Objection, Schofield essentially realleges the claim she made in the Habeas Petition—that evidence, in the form of either Eric Williams' testimony or co-conspirator Steven Davis' affidavit, indicate the existence of a second conspiracy, that if considered, would exculpate her. ECF No. 44 at p. 7. The R&R rightly concluded that this claim substantively meritless. ECF No. 40 at p. 9. While Schofield's counsel did not specifically advance this narrative at Schofield's criminal trial, her co-defendant's counsel did. ECF No. 40 at p. 9 ("The prosecution, Schofield's co-defendant's counsel, and the court discussed the alternative, drug-related motive at length in the robing room."). As a result, the prosecution investigated the alternative motive allegations, "eliminated the relevant suspect, and offered argument to the court in a motion in limine about why [Eric Williams'] testimony should be limited." *Id.*

In her Objection, Schofield argues that the Pennsylvania Rule of Evidence 702 should have applied in order to establish the admissibility of Eric William's testimony. Rule 702 applies to expert witnesses, who qualified to testify if they possess "scientific, technical, or other specialized knowledge" beyond the average layperson. Pa.R.E. 702. Whether a witness is an "expert" depends on "whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine." *Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528 (Pa. 1995).

---

[10] On appeal, Schofield alleged that after-discovered evidence, in the form of an affidavit signed by co-defendant Steven Davis, warranted a new trial. *See Commonwealth v. Schofield*, No. 2791 EDA 2007 at *5 (Pa. Super. Ct. Apr. 12, 2010); ECF No. 2 at p. 35. A claim alleging that after-discovered evidence warrants a new trial is distinct from a claim alleging that evidence was suppressed, which is why this Court finds it was correct for the R&R to conclude that Schofield had not exhausted the suppression of evidence claim on appeal. ECF No. 40 at p. 8.

Within her Objection, Schofield contends that Eric Williams, "in this particular circumstance" was "indeed an expert" because he was in a "unique position to identify" whether a second vehicle was following Steven Davis, Schofield's co-conspirator. ECF No. 44 ¶ 14. Schofield contends that evidence of such a vehicle is important as a "form of assurance that the [secondary] conspiracy came to fruition." *Id.* ¶ 15. Schofield has not contended why, if Eric Williams could be deemed an "expert" for all intents and purposes, this classification would warrant admissibility of his testimony in light of the trial Court's ruling on the Motion in Limine. In any case, this basis forms an argument that was not presented to Magistrate Judge Heffley in the original Habeas Petition. This Court has held that in accordance with Local Rules of Civil Procedure in the Eastern District of Pennsylvania, "new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." Local R. Civ. P. 72.1(IV)(c); *Grant v. Tice*, No. CV 17-3471, 2019 WL 2016260, at *3 (E.D. Pa. May 6, 2019) (DuBois, J.); *Kirk v. Meyer*, 279 F. Supp. 2d 617, 619 (E.D. Pa. August 18, 2003) ("Although the Third Circuit has remained silent on the precise issue, the vast majority of authority holds that a district court may properly refuse to hear claims not first presented to the assigned magistrate judge.").[11]

### C.  Objections Based on Ineffective Assistance of Counsel

Schofield also explicitly objects to the R&R regarding its findings related to her ineffective assistance of counsel claim on the grounds that "it does not incorporate the evidence at trial as noted above." ECF No. 44 ¶ 19. The Court presumes that the evidence "as noted

---

[11] Additionally, this Court notes that if this claim had been alleged in Schofield's habeas petition, this Court would find it to be substantively meritless. Schofield provides no supplemental evidence to suggest that Eric Williams has more knowledge than the average layperson regarding vehicular behavior. Instead, she makes only the bare assertion that Williams could attest to the "speed, changes of speed, direction and changes of direction" in order to establish that these factors are indicative of one car tailing another. ECF No. 44 ¶ 14.

above" refers to a heading within her objection petition that states counsel was ineffective for "failing to test" "the legality of the search of the hospital, the admissibility of the laboratory testing, and the court's prohibition of an alternative scenario." *See* ECF No. 44 at p. 8.

### 1. Failure to Challenge the Admissibility of the Laboratory Testing

As an initial matter, Schofield has not challenged the "admissibility of the laboratory testing" in a prior proceeding. Once again, "new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." *Grant v. Tice*, No. CV 17-3471, 2019 WL 2016260, at *3. Schofield did not adequately present this claim to Magistrate Judge Heffley—in her Habeas Petition, she states only that counsel was ineffective for "not preserving claims of right to confrontation." ECF No. 2 at p. 20. Accordingly, Schofield did not present this claim with enough specificity to Magistrate Judge Heffley.

### 2. Failure to Challenge the Legality of the Hospital Search

Schofield's Objection to the R&R alleging that counsel's failed to test the "legality of the search of the hospital" is without merit. The R&R addresses the admissibility of Schofield's hospital statements and rightly concludes that the statements made by Schofield while she was in the hospital were admissible. ECF No. 40 at pp. 10–11. Indeed, the record shows that trial counsel filed a motion to suppress Schofield's statements made in the hospital that were denied by the trial court. *See* ECF No. 40 at p. 10. The trial court found that there was "nothing to indicate that [Schofield's] statements were not voluntary and not knowingly taken." *Id.* at p. 11 (citing Transcript of Record at 6, *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. May 17, 2000 )). An inference can be drawn that in determining the admissibility of Schofield's statements, the trial court was also concluding that the officers'

presence in the hospital was legal, albeit "intrusive." *See id.* (citing Transcript of Record at 6, *Commonwealth v. Schofield*, No. CP-51-CR-0710721-1999 (Pa. Ct. Com. Pl. Phila. Cnty. May 17, 2000 )). As such, Schofield's objection that counsel "failed to test" the hospital "search" is inaccurate and cannot form the basis of an ineffective assistance of counsel claim.

### 3.   Failure to Challenge the Prohibition of an Alternative Scenario

Schofield's claim regarding her prior counsel's failure to test the "prohibition of an alternative scenario" also does not constitute ineffective assistance of counsel under *Strickland*. As mentioned *supra* at Part IV.A, evidence of a secondary drug-related conspiracy was discussed extensively in the robing room at trial, and ultimately Eric William's testimony was excluded on the grounds that it constituted inadmissible hearsay. ECF No. 40 at p. 9. Moreover, the prosecution conducted an independent investigation that eliminated the drug-related suspect and was prepared to present evidence of this at trial. *Id.*

Under *Strickland*, petitioners must sufficiently allege that counsel's performance was both deficient and prejudicial. 466 U.S. at 687. In this case, trial counsel's performance was neither. Had Schofield's trial counsel attempted to advance the argument of the secondary, drug-related conspiracy, the trial court likely would have found the effort to be redundant and futile. *See generally* ECF No. 40 at p. 15 (stating that counsel's attempt to present records to support a claim that Schofield lacked capacity to make a statement in the hospital would be "redundant and futile" because the trial court had already denied a Motion to Suppress her hospital statements); *see also Robinson v. Beard,* No. 06-CV-00829, 2020 WL 5362133, at *50 (E.D. Pa. Sept. 8, 2020) (holding that counsel's attempt to make a request would be redundant and futile in light of the fact that the trial court had already addressed the issue). Here, the trial court addressed the secondary, drug-related conspiracy at length and the admissibility of Eric Williams' testimony.

23

ECF No. 40 at p. 9. Any attempt that Schofield's counsel could have made to advance the same argument would have failed for the same reasons.

## V.      CONCLUSION

For the reasons set forth above, the Court overrules Petitioner's Objections to Magistrate Judge Heffley's R&R and adopts the R&R's findings and recommendations in their entirety. Schofield's petition for habeas relief is **DENIED** and **DISMISSED**. The Court further declines to issue a certificate of appealability or hold an evidentiary hearing. An appropriate Order will follow.

BY THE COURT:

*/s/ Chad F. Kenney*
_____
CHAD F. KENNEY
United States District Judge